540 So.2d 1110 (1989)
STATE of Louisiana
v.
James BYRD.
No. KA 88 0397.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
*1111 Ralph Tureau, Asst. Dist. Atty., Donaldsonville, for plaintiff-appellee, State.
Charles S. Long, Donaldsonville, for defendant-appellant James Byrd.
Before COVINGTON, C.J., and LOTTINGER and FOIL, JJ.
COVINGTON, Chief Judge.
James Byrd, Jr., was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. Defendant was tried by a jury which convicted him of the responsive offense of first degree robbery, a violation of LSA-R.S. 14:64.1. See LSA-C.Cr.P. art. 814(A)(22). The trial court sentenced defendant to a fifteen year term of imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Defendant brings this appeal, urging six assignments of error:
1. The trial court erred by overruling defense counsel's objections to hearsay testimony.
2. The trial court erred by allowing the prosecutor to make impermissible references during closing argument to defendant's failure to testify.
3. Defendant's retained (trial) counsel was ineffective on the basis of counsel's failure to object to the prosecutor's impermissible references during closing argument to defendant's failure to testify.
4. The trial court erred by imposing an excessive sentence.
5. The trial court erred by denying defendant's motion for post verdict judgment of acquittal.

*1112 6. The trial court erred by refusing to grant retained defense counsel's motion for a continuance of the trial.
Assignments of error four and six were not briefed on appeal and, therefore, are considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.
The record reflects that the instant offense occurred in Gonzales, Louisiana, on April 18, 1985, at about 11:00 p.m. The victim of the offense was Todd M. Delapp.
Delapp testified that, at the time of the offense, he was walking through the parking lot of the Wal-Mart Store located across from the Airline Highway. He observed a car, a pick-up truck, and two men. One of the men, defendant, was in the car; and the other man, Randy Byrd (defendant's brother), was leaning on the car's door. Suddenly, one of the men stood up and said: "Who are you?" Delapp surmised he might have encountered a drug dealer; and, considering the late hour of the day, he was leery of the situation. Delapp testified that the man started walking and said something. Delapp turned around and began to run. As he did so, he heard the man yell: "Freeze, police." The man then said "something like": "We have a .44 pinned to the back of your head." However, Delapp continued running, all the way into a Pizza Hut Restaurant.
Delapp's testimony revealed that, at the time he ran into the Pizza Hut, he was trying to "gather [his] wits" and determine what was happening. Because Delapp did not know whether or not the man who had yelled at him was in fact a police officer, he decided not to call the police. Delapp stayed inside the Pizza Hut about five minutes before walking out the door.
Outside the restaurant, Delapp saw a friend, John Fox, to whom he began to talk. Delapp turned around and saw defendant coming. Defendant ran up to Delapp and asked him if he had seen anyone running through the area. Delapp failed to reply. Defendant then apparently recognized Delapp; and, in response to defendant's questioning, Delapp acknowledged he was the individual being sought by defendant. Delapp testified that defendant then placed his arm around him and brought him to the wall on the side of the restaurant. Defendant frisked Delapp and started reading him his "rights or something." Robin, a waitress at the Pizza Hut, came outside. Defendant exhibited a badge to Robin, and defendant told her he was a police officer and that everything was all right. Robin then went back inside the restaurant.
Delapp further testified that he and defendant then proceeded to a carwash, located to the rear of the restaurant, where defendant's car was parked. Defendant searched Delapp again, and defendant told Delapp that he had been running from a police officer and that he had almost gotten shot. Defendant also told Delapp that it was illegal to be in Gonzales "without $10 in your pocket" and that if an individual did not have $10 in his pocket he was a vagrant. Delapp informed defendant that he had twenty-five dollars. Suddenly, Randy Byrd walked up; and he and defendant began talking. Thereafter, Randy left defendant alone with Delapp.
While the two were alone, defendant pulled a gun from the left side of his belt buckle. Although defendant "didn't really point [the gun] at [Delapp] for maybe more than a second," he "waved it around" in Delapp's direction, making it "click" three or four times. Delapp testified that he was "shaking." Defendant held the gun in his hand for twothree minutes before he put it away. Defendant informed Delapp that he was going to fine him for being a vagrant. Immediately after putting his gun away, defendant told Delapp to put twenty-five dollars on the dashboard of his car. Delapp complied. Defendant continued to talk to Delapp before allowing Delapp to leave. Thereafter, Delapp went home. Delapp testified that he did not report the matter to the police that night because defendant had identified himself as an undercover policeman. The following morning, Delapp related the incident to his National Guard Sergeant, William S. Ballard. Ballard reported the incident to the Gonzales Police Department. A police investigation was conducted. Delapp identified *1113 defendant as the perpetrator of the instant offense; and defendant's arrest followed.
ASSIGNMENT OF ERROR NO. ONE:
By means of this assignment, defendant claims that the trial court erred by overruling defense counsel's objections to hearsay testimony of state witnesses Robin Ward Dixon, William S. Ballard and Clarence Brock. Our review of the particular testimony of the witnesses relied upon by defendant follows.
Defendant argues that Robin Ward Dixon's testimony, as to a statement the victim made to her, was inadmissible hearsay evidence. Dixon testified that she was working as a waitress at Pizza Hut on the night of the instant offense. During her direct examination, the following exchange occurred:
Q Did anything unusual happen that night?
A Yes, sir.
Q Okay. Tell me what happened.
A Todd came in Pizza Hut just prior to us closing and he said there was [sic] two men chasing him
MR. MATTHEWS: Objection. Hearsay.
MR. TUREAU: Your Honor, that's not hearsay. It's what
THE COURT: I'll permit that.
A Do I shut up or do I go on.
Q (BY MR. TUREAU) No, go on. Tell us what happened. That's just lawyer talk.
A [Todd Delapp] came in [the] Pizza Hut that night and said that there was [sic] two men chasing him with a gun, trying to kill him and he irritated me so I told him to leave. * * *
What forms part of the res gestae is always admissible in evidence. LSA-R.S. 15:447. To constitute res gestae, the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. LSA-R.S. 15:448. In Louisiana, the res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before or after commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after commission of the crime, if the continuous chain of events is evident under the circumstances. State v. Washington, 444 So.2d 320, 324 (La.App. 1st Cir.1983), writ denied, 445 So.2d 450 (La.1984).
We find that Ward's testimony as to the victim's statement to her was part of the res gestae. The statement was made during the time the victim was being pursued by defendant shortly before the actual robbery. Hence, the statement formed in conjunction with the criminal act one continuous transaction. Accordingly, the witness' testimony was properly admitted into evidence.
On direct examination of William S. Ballard, the prosecutor posed a question to Ballard in regard to what the victim told Ballard, when he reported the instant offense to Ballard, on the day after the offense. Defense counsel objected to the question as calling for hearsay testimony, and the trial court overruled the objection. Ballard then testified that the victim told him that he had been accosted by the two individuals who identified themselves as undercover policemen, that they had harassed him, that they frisked him and that they fined him twenty-five dollars for vagrancy.
Hearsay evidence is evidence of an unsworn, out-of-court statement made by a person other than the testifying witness which is introduced for the truth of its content. State v. Valentine, 464 So.2d 1091, 1093 (La.App. 1st Cir.1985), writ denied, 468 So.2d 572 (La.1985). However, if such a statement is offered for any other purpose, then the statement is not hearsay. 464 So.2d at 1093.
Accordingly, if Ballard's testimony had been offered only to show that the conversation had occurred, the testimony would not be hearsay. See State v. Huizar, 414 So.2d 741, 749 (La.1982). However, additional questioning by the prosecutor through which the state elicited further testimony as to the content of the conversation reveals that Ballard's testimony was *1114 offered for the truth of the content of the conversation. Hence, the testimony constituted inadmissible hearsay.
We note, however, that the hearsay testimony of Ballard was cumulative and corroborative of the victim's testimony that had already been placed before the jury. Therefore, the admission of the hearsay is harmless error. See State v. Spell, 399 So.2d 551, 556 (La.1981).
During direct examination of Gonzales Police Officer Clarence Brock, the following exchange occurred:
Q How did you first find out about [the instant charge?]
A We received a complaint ... from a Sergeant Ballard with the National Guard Armory that one of his men MR. MATTHEWS: Once again, Your Honor, I'm going to interject an objection of hearsay.
THE COURT: Don't say what anybody told you.
A Okay, we received information that one of the person's [sic] at the National Guard Armory had been robbed.
Q (BY MR. TUREAU) Did you investigate that?
A Yes, sir. Well, it wasn't exactly robbed at the time. At the time he had been rousted by two police officers.
MR. MATTHEWS: Once again I'm going to object and ask to have it stricken from the Record. This is nothing but going in the back door what you can't get in through the front.
THE COURT: Don't directly say what anybody told you. I believe he can state the basis of hisaccording to the investigation.
MR. MATTHEWS: I believe he can state, Your Honor, that he received a complaint and he received a call.
THE COURT: So far it's all right. Continue.
MR. TUREAU: I'll make sure I don't ask questions about what anyone told him in that complaint, Your Honor.
Q (BY MR. TUREAU) Subsequent to receiving that complaint, did your office investigate?
A Yes, sir, they did.
Q Did your office determine who the person was that had been robbed?
A Yes, sir, they did.
Q Who was that person?
A Mr. Todd Delapp.
Q Did you talk to Todd Delapp?
A Yes, sir, I did.
Q And what did he tell you about what had happened?
MR. MATTHEWS: Once again, Your Honor, I'm going to enter an objection to hearsay.
THE COURT: I'll let him say what Mr. Delapp said. He's here and he can be recalled to the stand.
Brock then testified as to the facts and circumstances of the instant offense as recounted to him by the victim.
Over further hearsay objection by defense counsel, Brock also testified that the victim gave him a license plate number of an automobile of the suspected robber and that his office ran a computer check of the license number. The results of the computer check disclosed the vehicle bearing the license number belonged to defendant.
A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted not to prove the truth of the assertion, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the investigating officer. State v. Watson, 449 So.2d 1321, 1328 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). Much of Officer Brock's testimony was admitted to explain the sequence of events leading to defendant's arrest. Even assuming, arguendo, that Brock's testimony recounting the victim's statements to him constituted hearsay, that testimony was cumulative and corroborative of the victim's testimony; and, hence, its erroneous admission into evidence is harmless. See State v. Spell, 399 So.2d at 556.
This assignment lacks merit.
ASSIGNMENTS OF ERRORS NOS. TWO AND THREE:
By means of assignment of error number two, defendant contends that the *1115 trial court erred by allowing the prosecutor to make impermissible references during closing argument to defendant's failure to testify. In assignment of error number three, defendant claims that his retained (trial) counsel was ineffective, on the sole basis of counsel's failure to object to the alleged impermissible references raised in assignment two.
In support of his contentions, defendant relies upon the following remarks made by the prosecutor during his closing argument to the jury:
He [the victim] was left alone with this accused. He's the only one that's told you what happened when they were alone. His testimony is unrefuted.
The context within which those remarks were made pertained to a review of the evidence that had been introduced at the trial, in light of the evidence the prosecutor had outlined during the state's opening statement to the jury. Immediately after making the remarks quoted above, the prosecutor told the jury the following:
I submit to you that I have showed to you everything that I told you at the beginning of this trial that I would show to you.
LSA-C.Cr.P. art. 770 prohibits both direct and indirect references to a defendant's failure to testify. However, when the allusion is indirect, it constitutes reversible error only when the prosecutor intended to emphasize the defendant's failure to testify. State v. Jackson, 454 So.2d 116, 118 (La.1984).
This Court will inquire into the intended effect on the jury only to distinguish between an indirect reference to the defendant's failure to testify and a reference to the state's case as unrebutted. State v. Burkhalter, 428 So.2d 449, 453 (La.1983). The latter reference is generally permissible. 428 So.2d at 453. See, e.g., State v. Jackson, 454 So.2d at 118; State v. Sims, 346 So.2d 664, 669 (La.1977); and State v. Hilburn, 512 So.2d 497, 505 (La.App. 1st Cir.1987), writ denied, 515 So.2d 444 (La. 1987).
We find that the wording of the remarks of the prosecutor in this case neither focused on defendant's failure to take the stand at trial nor did it evince any intent of the prosecutor to focus on defendant's failure to take the stand. The remarks included a reference to the victim's testimony as unrefuted; and the remarks were made in a context in which the state recapitulated the evidence introduced at trial and sought to convince the jury that the victim's version of the incident was more credible than that advanced by the defense. See State v. Burkhalter, 428 So.2d at 452-454; State v. Smith, 327 So.2d 355, 362-363 (La.1976) (on rehearing); and State v. Davis, 471 So.2d 310 (La.App. 4th Cir.1985). Hence, we conclude that the prosecutor's remarks were neither a direct reference nor an indirect reference to defendant's failure to testify. Accordingly, defendant's other contention of ineffectiveness of counsel, which was premised solely on the remarks being impermissible, necessarily falls.
These assignments, therefore, lack merit.
ASSIGNMENT OF ERROR NO. FIVE:
By means of this assignment, defendant contends that the evidence was insufficient to convict him of first degree robbery.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.1987), writ denied, 511 So.2d 1152 (La.1987). This standard is codified in LSA-C.Cr.P. art. 821.
First degree robbery is defined in LSA-R.S. 14:64.1A as follows:
First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
Initially, we note that the testimony of the victim alone is sufficient to prove the *1116 elements of an offense. State v. Orgeron, 512 So.2d 467, 469 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988). In finding defendant guilty of the responsive offense of first degree robbery, it is obvious the jury believed the victim. The credibility of the victim's testimony is a matter of weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Tate, at 551. Herein, the victim's testimony established that defendant represented himself to the victim as a police officer. While the two of them were alone together, defendant pulled a gun and waved it in the victim's direction making it "click" several times. The victim was scared and was "shaking." Immediately before telling the victim to place his twenty-five dollars on the dashboard of defendant's car, defendant put his gun away. After the victim relinquished his money to defendant, defendant allowed him to leave.
Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that the state proved all the elements of the offense of first degree robbery.
This assignment lacks merit.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.