583 So.2d 901 (1991)
STATE of Louisiana
v.
David L. VEAL.
KA 90 1163.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
*902 Bryan Bush, Dist. Atty., Baton Rouge, by Jack Nossaman, Asst. Dist. Atty., for plaintiff/appellee.
Office of the Public Defender, Baton Rouge, for defendant/appellant.
Before COVINGTON, C.J., and LANIER and GONZALES, JJ.
GONZALES, Judge.
Defendant, David L. Veal, was charged in a single bill of information with three counts of simple burglary of an inhabited dwelling, in violation of La.R.S. 14:62.2. After a trial by jury, he was convicted as charged. Defendant was sentenced to twelve years imprisonment at hard labor, the first year without benefit of probation, parole, or suspension of sentence, for each of the three counts. Additionally, the sentences are to be served consecutively.
Defendant advances nine assignments of error, as follows:
1. The trial court erred in granting the state's motion in limine regarding the use of hearsay testimony;
2. The trial court erred in denying the motion to suppress statements;
3. The trial court erred in denying a challenge for cause;
4. The trial court erred in overruling an objection to the introduction of hearsay testimony;
5. The trial court erred in overruling an objection to the introduction of hearsay testimony;
6. The trial court erred in overruling an objection to the introduction of hearsay testimony;
7. The trial court erred in adjudging defendant guilty because the evidence was insufficient;
8. The trial court erred in denying the motion for a new trial; and
9. The trial court erred by imposing an excessive sentence and in failing to comply with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1.
Defendant has expressly abandoned assignments of error two, three, and seven. Assignment of error number eight, purportedly briefed with assignments of error one, four, five, and six, was not briefed and, therefore, is considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

FACTS
On September 26, 1988, at two o'clock p.m., James Martin returned to his home on South Eugene Street and discovered he had been burglarized. All drawers in the bedroom had been emptied, and a videocassette recorder and gun were missing. The perpetrator removed a window unit, used a chair as a ladder, and gained entry into the house. During the police investigation of the burglary, latent fingerprints were lifted from the window unit, the windows, and the chair.
On October 3, 1988, at 12:30 p.m., Rod Masterson returned to his Bedford Drive home for lunch. He noticed that his front door and living room window were open and that his videocassette recorder was missing. While Mr. Masterson waited for the police to arrive, a neighbor related that Charles "Butch" James, who lived across the street, had seen someone in Masterson's driveway. Masterson and Officer Roger Tully spoke with Mr. James regarding a description of the suspect vehicle. Latent fingerprints were collected from this house as well.
Ella Gatlin, Masterson's next-door neighbor, was the victim of a burglary on the same date. Prescription drugs, a watch, and cash were taken from her home. Latent fingerprints were lifted from some of the windows.
*903 Officer Roger Tully stated that Mr. James reported having seen a 1978 or 1979 maroon, vinyl-top, Ford Thunderbird, bearing license number 273 A 911, in his neighbors' driveways. The license plate number was processed through the computer and no registration appeared for that number. Officer Tully, aware of a vehicle similar to the one described, with a similar license number, ran the license with which he was familiar. The license number check revealed that the vehicle was registered to defendant and matched the description given by Mr. James.
The latent prints and photographs of the prints taken at the crime scenes, were delivered to Officer Annie Michelli, a latent examiner and fingerprint comparison expert, for analysis. Officer Tully asked Officer Michelli to compare the fingerprints from the crime scenes with defendant's fingerprints. In her opinion, at least one print from each crime scene matched defendant's prints.

HEARSAY TESTIMONY
Assignments of error one, four, five, and six were briefed together and will be considered together. By these assignments of error, defendant complains of the trial court's error in permitting the state to introduce statements allegedly made by Mr. James to Officer Tully, Rod Masterson, and Ella Gatlin. Defendant contends the trial court and the state incorrectly interpreted Louisiana Code of Evidence article 804(A.)(4), and thereby prejudiced him by the erroneous admission of inadmissible hearsay. Defendant also claims that his right of confrontation was abridged because he was unable to test the accuracy of Mr. James' observations. He points out the inconsistencies between the statement made to Officer Tully and the statements made to two of the victims.
At the hearing on the motion in limine, filed by the state, the trial court ruled that Officer Tully would be permitted to testify regarding the statement made by Mr. James. The ruling was based upon the fact that the declarant was deceased. Defense counsel pointed out that unavailability was only one of the prerequisites to admissibility, and that the state should be required to demonstrate the reliability of the declarant.
Hearsay evidence is evidence of an out-of-court, unsworn, oral or written statement made by a person other than the testifying witness which is offered for the truth of its content. Louisiana Code of Evidence article 801(C.); State v. Gremillion, 542 So.2d 1074 (La.1989). However, if offered for any other purpose, then the statement is not hearsay. State v. Byrd, 540 So.2d 1110, 1113 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
The state submits that the testimony of Officer Tully regarding what Mr. James told him, should not be considered hearsay because it was not offered to prove the truth of the matter asserted. In the alternative, the state argues if the testimony is found to be hearsay, it is admissible hearsay because an officer may refer to statements by others in order to explain his own actions. State v. Edwards, 406 So.2d 1331 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982); State v. Gray, 542 So.2d 684 (La.App. 4th Cir.1989); State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986). Additionally, the state argues that because Mr. James died of acquired immune deficiency disease, he was truly unavailable as a witness and the provisions of Louisiana Code of Evidence Article 804(A.)(4) apply.[1]
A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted not to prove the truth of the assertion, but to explain the sequence of events leading to *904 the arrest of the defendant from the viewpoint of the investigating officer. State v. Watson, 449 So.2d 1321, 1328 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Byrd, 540 So.2d at 1114. Much of Officer Tully's testimony explained the sequence of events leading up to defendant's arrest.
The problem presented by this factual scenario is that the statement sought to be introduced contains both assertive and non-assertive characteristics. It is non-assertive in that it is purportedly offered merely to show the reasoning or basis for the direction of the police officer's investigation; however, it is assertive in that it also tends to implicate the defendant or place him at the scene of the crime. The Louisiana Supreme Court discussed this problem in State v. Wille, 559 So.2d 1321, 1331 (La.1990), as follows:
Admission of information received by a police officer in the investigation of a crime, on the basis that such information explains the officer's presence and conduct and therefore does not constitute hearsay evidence, is an area of widespread abuse. McCormick on Evidence § 249 (E. Cleary 3d ed. 1984).5 Such information frequently has an impermissible hearsay aspect as well as a permissible nonhearsay aspect, and the court in determining admissibility should balance the need of the evidence for the proper purpose against the danger of improper use of the evidence by the jury. Id. The fact that an officer acted on information received in an out-of-court assertion may be relevant to explain his conduct, but this fact should not become a passkey to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule.6 G. Pugh, Louisiana Evidence Law 429-431 (1974).
When an out-of-court statement, such as information received by a police officer during an investigation of a crime, has both an impermissible hearsay aspect and a permissible nonhearsay aspect, the issue of relevancy becomes significantly interrelated with the hearsay issue. If the nonhearsay content of the statement has little or no relevance, then the statement should generally be excluded on both relevance and hearsay grounds. Marginally relevant nonhearsay evidence should not be used as a vehicle to permit the introduction of highly relevant and highly prejudicial hearsay evidence which consists of the substance of an out-of-court assertion that was not made under oath and is not subject to cross-examination at trial.
....
5. The treatise identified the area of widespread abuse as follows:
In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information received", or words to that effect, should be sufficient. Nevertheless, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great.
6. This court has previously restricted the admission of this kind of evidence. In State v. Thompson, 331 So.2d 848 (La.1976), the trial court permitted an officer, under the guise of explaining his subsequent conduct, to testify that an anonymous informant had specifically identified the defendant as one of two men involved in an armed robbery. In reversing the conviction, this court stated that the officer could testify as to his receipt of information from the informer and his subsequent conduct, but not as to "the content of the statement of this anonymous witness, not sworn o[r] subject to cross-examination at the trial, to the effect that this defendant had committed the crime for which he was on trial". Id. at 849. The court noted that the content of the out-of-court statement (which was used before the judge to obtain a search warrant) was not admissible *905 at trial for any relevant issue before the jury.
The Wille court concluded there was no true issue in that case regarding the propriety of any action taken by the officer during his investigation of the crime, and found that the real purpose of the testimony was to place before the jury the fact that the persons making the statements to the officer had named the defendant as the perpetrator of the crime. 559 So.2d at 1331. The supreme court found that "the extremely marginal relevance of ... [the officer's] testimony for the purpose of explaining his conduct in the investigation was greatly outweighed by the danger that the jury would use this testimony as substantive evidence." 559 So.2d at 1332.
The Second Circuit has also addressed this issue in State v. White, 559 So.2d 541, 544 (La.App. 2d Cir.1990):
When a police officer makes a stop in reliance on an informant's tip, the officer's testimony about what the informant told him is not deemed to be hearsay at a hearing on a motion to suppress because it is offered to prove the officer's state of mind which is relevant to the issue of the legality or reasonableness of the stop, and not to prove that the informant's assertions were true....
... While the officer who stopped the defendant may testify at trial that he was acting on an informant's tip when he made the stop, he may not relate to the jury the details of the informant's out-of-court-statement when those details amount to an assertion that the defendant has committed or will commit the crime for which he is being tried....
Such "content" or detailed testimony is inadmissible hearsay evidence at trial because the officer's state of mind and the reasonableness of the stop are not issues for the jury to decide, and the evidence can only be deemed as being offered to prove that the defendant committed the crime, as the informant said he did or would....
Because the steps taken in the investigation of this case were not at issue at trial, the only possible relevance of the statement by Mr. James as related by Officer Tully was to place defendant's car, and thereby the defendant, at the scene on the date of the crime. For this reason, the evidence should have been suppressed.
Both the Wille and White courts agree that when evidence such as this has been impermissibly admitted into evidence that a harmless error test is applied to determine whether the improperly admitted evidence contributed to the verdict. The supreme court explained this test as follows:
[T]he erroneous admission of the hearsay and irrelevant evidence does not require a reversal of defendant's conviction.... Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Gibson, 391 So.2d 421 (La.1980); Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988).
Confrontation errors are subject to a Chapman harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were [sic] fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Id. at 684, 106 S.Ct. at 1438. Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case". Id. at 684, 106 S.Ct. at 1438. [559 So.2d at 1332.]
Although the introduction of the statement was in error, we believe that it was cumulative with other evidence presented and therefore harmless. The investigating officers and the fingerprint expert testified regarding fingerprints found *906 at all three burglarized homes. Prints in all three instances were positively identified as being those of the defendant. Thus, even though the inadmissible statement that defendant's vehicle was at the scene of the crime implicated defendant as the perpetrator, it was the fingerprint evidence which provided the proof necessary to establish defendant's presence at the crime scene. Therefore, we find beyond a reasonable doubt that the inadmissible statement did not contribute to the guilty verdict. See State v. Byrd, 540 So.2d at 1114.
Two other state witnesses gave testimony recounting Mr. James' statements to them. Rod Masterson testified that Mr. James related that he had seen a black male "hunched down" in an old car in Masterson's driveway. Ella Gatlin testified that Mr. James said he had seen a black male "riding low" in an old, gray Thunderbird, and that he had the license plate number. Over defense counsel's objection, the trial court improperly permitted these two witnesses to give inadmissible hearsay testimony. Likewise, we believe this inadmissible hearsay testimony by the two victims was cumulative and therefore, harmless.
These claims are without merit.

EXCESSIVE SENTENCE
By this assignment of error, defendant complains that his sentence is excessive and that the trial court failed to follow the sentencing guidelines in La.C.Cr.P. art. 894.1. Defendant notes that he received the maximum sentence for each of the instant offenses. Additionally, he urges that concurrent, rather than consecutive, sentences were appropriate, citing State v. Rivers, 446 So.2d 913 (La.App. 1st Cir. 1984).
Article I, section 20 of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. A sentence within the statutory limits may nonetheless violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. Moreover, maximum sentences are appropriately reserved for the most egregious or blameworthy of offenders. State v. Brown, 504 So.2d 1055, 1059 (La.App. 1st Cir.), writ denied, 506 So.2d 1223 (La.1987). A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of that discretion. State v. Lanclos, 419 So.2d 475 (La. 1982).
La.C.Cr.P. art. 894.1 sets forth the factors to be considered by the trial court before imposing sentence. The goal of the legislative scheme is to tailor the individual sentence imposed on the particular defendant to the particular circumstances of the case. State v. Telsee, 425 So.2d 1251, 1253 (La.1983). The trial court need not recite the entire checklist of La.C.Cr.P. art. 894.1, but the record must reflect that it adequately considered the guidelines. State v. Davis, 448 So.2d 645, 653 (La.1984).
Defendant was found guilty of three counts of simple burglary of an inhabited dwelling which carries a penalty of imprisonment at hard labor for not less than one year, without benefit of parole, probation, or suspension of sentence, nor more than twelve years. La.R.S. 14:62.2. Defendant received the maximum prison term of twelve years at hard labor, the first year of which is to be served without benefit of parole, probation, or suspension of sentence, for each count, for a total of thirty-six years.
The transcript of the sentencing hearing reflects that the trial court considered the presentence investigation report and the guidelines of La.C.Cr.P. art. 894.1. The trial court stated that, although defendant was a young person and his age was a mitigating factor in his favor, he had a lengthy criminal record as an adult and as a juvenile and concluded that the maximum sentence was in order. The presentence *907 investigation report reflects that defendant is an experienced burglar.
This case is distinguishable from State v. Rivers, 446 So.2d at 915, cited by defendant. That case suggests that when the offender has no prior record, the convictions arise out of a single course of criminal conduct, and there are no specific reasons given for heavier punishment, concurrent, rather than consecutive, sentences may be appropriate. Such is not the case herein.
The record clearly reflects sufficient compliance with La.C.Cr.P. art. 894.1, and that the trial court did not abuse its sentencing discretion. This assignment of error is without merit.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Louisiana Code of Evidence article 804 refers to the unavailability of a declarant. In addition, the reliability of the evidence must be established. See Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); State v. Kidd, 568 So.2d 175, 180 (La.App. 2nd Cir.1990). Finding that the literal unavailability requirements of paragraph A of article 804 have been met is not tantamount to a conclusion that the constitutional guarantees of confrontation have been satisfied. See Reporter's Comments to Louisiana Code of Evidence article 804.