607 So.2d 937 (1992)
STATE of Louisiana, Appellee,
v.
Clarence Mack HICKS, Appellant.
No. 24267-KA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
*940 Indigent Defender Bd. by Ford E. Stinson, Jr., Bossier City, for appellant.
Richard P. Ieyoub, Atty. Gen., James M. Bullers, Dist. Atty., Whitley R. Graves, Asst. Dist. Atty., Bossier City, for appellee.
Before MARVIN, SEXTON and STEWART, JJ.
STEWART, Judge.
Defendant, Clarence Mack Hicks, appeals his conviction of first degree murder (LSA-R.S. 14:30). He alleges that the trial court erred in its rulings on the admissibility of certain testimony and other evidence, denying his motion for mistrial, and threatening defense counsel with contempt. Finding no merit to these assignments, we affirm the conviction.

FACTS
On the evening of September 21, 1990, John Lindsey, a liquor salesman, went to Charity's Place, a small bar located south of Haughton, Bossier Parish, Louisiana, with his wife, Linda. They stayed there until some time after midnight on September 22, 1990. Before they left, they offered a ride to Bobbie Ann Taylor and Marsha Johnson.
Taylor and Johnson were friends of the defendant, Clarence Hicks, who was also at Charity's Place that night. Hicks followed Mr. Lindsey as he left the bar and drove his wife, Taylor, and Johnson, headed south on LA 157 to its intersection with LA 527 and turned east.
Hicks flashed the headlights of the vehicle he was driving. Another friend, Barbara Green, was a passenger in Hicks' vehicle. Mr. Lindsey pulled off the road into the parking lot of Pop's Pantry. Hicks pulled over, stopped his car in the parking lot and walked over to the Lindseys' car.
The testimony given at trial is somewhat confusing as to the order of the following events, but it is undisputed that Hicks attacked Mr. and Mrs. Lindsey. He hit Mrs. Lindsey on her face and head several times with his fist. According to the testimony of Marsha Johnson, Hicks tried to grab Mrs. Lindsey's purse during this attack, but she held on to it tightly. This beating rendered Mrs. Lindsey unconscious.
Hicks also struck Mr. Lindsey. At some point, Mr. Lindsay was on the ground as Hicks stomped him repeatedly. This beating broke Mr. Lindsey's neck and severed his spinal cord. Hicks stomped Mr. Lindsey so forcefully that shoe prints, in the form of bruises, were left on Mr. Lindsey's face and body. Mr. Lindsey sustained broken ribs on both sides of his chest and severe contusions to other parts of his body, and died from the smashing of his neck.
*941 Someone in the group took Mr. Lindsey's billfold, removed cash and credit cards contained therein, and threw the billfold and miscellaneous contents such as drivers license and business cards to the ground. At some point, Hicks removed a tire tool from the trunk of the Lindseys' car. According to Marsha Johnson, Hicks then moved toward Mr. Lindsey once more and raised the tool as though he was going to strike the victim with it. After one of the other people at the scene pleaded with Hicks to put the tool down, he replaced the tool in the trunk and left with Taylor, Johnson, and Green. Hicks and the others later "partied" by using cocaine which was purchased with money from Mrs. Lindsey's purse.
Hicks was arrested, indicted for first degree murder and tried before a jury. The jury unanimously found him guilty of first degree murder, in violation of LSA-R.S. 14:30, as charged. Because the jury could not reach a decision during the penalty phase of the trial, the trial court sentenced Hicks to life imprisonment without benefit of parole, probation or suspension of sentence.
Clarence Hicks appeals his conviction, alleging 14 assignments of error. For the following reasons, we affirm.

DISCUSSION
Assignment of Error No. 4: Mistrial
At trial, Deputy Richard Cowan of the Bossier Parish Sheriff's Office testified that there was no attempt to obtain fingerprints at the crime scene. When asked why it was deemed unnecessary to dust for fingerprints, Cowan responded "Because of the admission of the suspect." Although it was later admitted into evidence, the confession was not in evidence and had not been otherwise presented to the jury when Cowan mentioned the defendant's "admission." Defense counsel moved for mistrial and the trial court denied his motion. The recorded statement, which included the confession, was later admitted into evidence. Hicks also testified at trial; his testimony and the recorded statement were substantially consistent with each other. Hicks asserts that the trial court erred by denying his motion for a mistrial based upon Cowan's reference to his "admission".
A mistrial is a drastic remedy. Except in instances where mandatory, a mistrial is warranted only when substantial prejudice results to the accused, depriving him of a reasonable expectation of a fair trial. State v. Whitley, 296 So.2d 820 (La. 1974). The determination of whether prejudice has resulted lies within the sound discretion of the trial judge. State v. McLeland, 456 So.2d 633 (La.App.2d Cir. 1984), writ denied, 461 So.2d 312 (La.1984).
In the instant case, the defendant knew of the state's intent to introduce his confession into evidence and that confession was subsequently admitted. Therefore, no prejudice resulted to the accused. See and compare State v. Sanders, 539 So.2d 114 (La.App.2d Cir.1989), writ denied, 546 So.2d 1212 (La.1989) and State v. Jackson, 523 So.2d 251 (La.App.2d Cir.1988), writ denied, 530 So.2d 565 (La.1988).
In State v. Sanders, supra, a witness for the prosecution referred to the substance acquired during a transaction with the defendant as marijuana rather than as suspected marijuana. Later in the trial, laboratory test results were admitted into evidence which positively identified the substance as marijuana. This court held that because the test results later proved that the witness' statement was not incorrect, there was no prejudice to the defendant and the trial court properly denied the request for a mistrial.
In State v. Jackson, supra, a deputy testifying for the prosecution stated that the defendant had admitted his participation in the armed robbery prior to making his video taped statement. The defendant argued in his request for a mistrial that he had not been placed on notice of this inculpatory statement as provided by LSA-C.Cr.P. Art. 768. This court held that where the defense had been apprised of the state's intent to introduce the videotaped confession, and this tape was properly admitted into evidence, the defendant was not *942 surprised or prejudiced by the officer's statement.
Because the instant confession was later admitted into evidence and the defendant knew of the state's intention to introduce inculpatory statements of the defendant, this assignment is without merit.
Assignment of Error No. 7: Was Hicks' Statement Voluntary?
After a hearing, outside the presence of the jury, on the admissibility of Hicks' recorded statement, in accordance with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the trial court ruled the statement was voluntary and admissible. Defendant complains that this ruling was erroneous, and that the trial court denied defense counsel the right to argue the objection prior to ruling.
Defendant contends the confession should have been ruled inadmissible for two reasons: (1) Hicks requested medical attention for an injury to his hand, but was denied treatment until after he confessed; and (2) Hicks was under the influence of alcohol and drugs. He makes no other specific allegations of threats or promises.
Before a confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; LSA-C.E. 104. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned on appeal unless they are clearly contrary to the evidence. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Castillo, 389 So.2d 1307 (La.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); State v. Gaskin, 412 So.2d 1007 (La.1982); State v. Griffin, 568 So.2d 198 (La.App.2d Cir.1990), writ denied, 592 So.2d 1330 (La.1992).
Once a defendant alleges specific instances of police misconduct in reference to a statement, it is incumbent upon the state to rebut each instance. State v. Serrato, 424 So.2d 214 (La.1982); State v. Worthy, 532 So.2d 541 (La.App. 1st Cir. 1988), writ denied, 538 So.2d 610 (La.1989).
Intoxication can render a confession involuntary if intoxication is of such a degree that it negates defendant's comprehension and renders him unconscious of the consequences of what he is saying. Whether such a level of intoxication is of a degree sufficient to vitiate voluntariness of the confession are questions of fact. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176, reh. denied, 464 U.S. 1004, 104 S.Ct. 515, 78 L.Ed.2d 702 (1983); State v. Wilson, 469 So.2d 1087 (La.App.2d Cir. 1985), writ denied, 475 So.2d 778.
During the hearing before the judge, the following evidence was presented: Detective Gehlen Padgett, an investigator with the Bossier Parish Sheriff's Office, read the defendant his rights. None of the law enforcement officers used coercion to obtain his statement. Hicks responded to questions about his hand, but did not complain about pain or any other injury. Deputy Charles Cook, also an investigator with the Bossier Parish Sheriff's Office, was the first to mention Hicks' injury when he asked about Hicks' hand because it was swollen. During cross-examination Deputy Cook testified as follows:
Q. Do you recall was he complaining about [defendant's hand] hurting him?
A. No, sir. I asked him was his hand hurting, and he saiduhno. I said it's swollen pretty good. And he said, it's not hurting that bad. And I asked him did he want to go to the doctor. And he said, yeah.
When asked whether he had told Hicks that a statement would have to be made before Hicks could see a doctor, Deputy Cook responded that he had not made such *943 a statement. The record does not indicate that the availability of medical treatment was conditioned upon whether Hicks gave a statement.
There is no evidence about the actual extent of Hicks' hand injury, and according to the testimony of three officers, Hicks did not complain of the injury prior to making a statement. During his taped confession, Hicks made no mention of this injury.
With regard to the influence of alcohol and drugs, the following evidence was presented to the judge: Detective Gehlen Padgett, and Deputies Larry Ledbetter and Charles Cook were with Hicks after his arrest. Deputy Ledbetter had transported Hicks to Padgett and Cook for interrogation. These three men, who were with Hicks prior to and during his recorded statement, testified that Hicks was not noticeably under the influence of drugs or alcohol.
Deputy Wilbert Denson, who was responsible for booking Hicks into the parish jail, stated that he suspected Hicks was under the influence of alcohol or drugs when he was first presented at the jail. He stated that this was based strictly on his personal evaluation and that no tests of any kind were conducted to confirm or deny his suspicions. Denson also stated, in response to a question from the prosecution, that he could have mistaken lack of sleep and being scared and worried for being under the influence of drugs or alcohol.
The trial judge listened to the entire tape of Hicks' confession and did not find that Hicks' speech was slurred or broken in a way implying intoxication. The only evidence presented at the hearing that Hicks was under the influence of alcohol or other drugs was the testimony of Deputy Denson who stated he did not recall any specific indicia of intoxication and that, in any case, Hicks was not "falling down drunk."
The record does not support Hicks' contention that his intoxication was of such a degree that it vitiated the voluntariness of his confession. The trial court did not abuse its discretion by finding that the statement was not voluntary and admissible.
We note that argument of counsel is not evidence. Even if the trial court did not allow defense counsel to make his argument before ruling on the evidence presented during the hearing, defense counsel was allowed to examine and cross-examine witnesses, as well as to present other evidence. Defendant presents no legal support for his contention that denial of the "right" to argue prior to ruling constitutes error, and we have found no such "right" or requirement. The absence of argument is of no moment.
This assignment is without merit.
Assignments of Error Nos. 6 and 13: Photographs
In these assignments, Hicks contends that photographs of Mr. Lindsey at the time of the autopsy, and of Mrs. Lindsey shortly after she was beaten, were introduced solely to inflame the passions of the jury. Defendant does not indicate how or whether he has been prejudiced by admission of these photographs.
In general, photographs are admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); State v. Wiley, 513 So.2d 849 (La.App.2d Cir.1987), writ denied, 522 So.2d 1092 (La. 1988).
In particular, the admissibility of allegedly gruesome photographs depends on whether their probative value outweighs the possible prejudice that may result from their display to the jury. State v. Gaskin, supra; State v. Lindsey, 404 So.2d 466 (La.1981), appeal after remand, 428 So.2d 420, cert. denied, 464 U.S. 908, 104 S.Ct. 261, 78 L.Ed.2d 246, reh. denied, 464 U.S. 1004, 104 S.Ct. 515, 78 L.Ed.2d 702, reversed (on other grounds), 769 F.2d 1034, reh. denied, 775 F.2d 301 (5th Cir.1985). Photographs of the victim's body are generally relevant to prove corpus delicti; to corroborate other evidence of the manner *944 in which death occurred; to establish the location, severity, and number of wounds; and to establish the identity of the victim. State v. Edwards, 406 So.2d 1331 (La. 1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982).
The trial court has considerable discretion in admitting photographs and its ruling will not be disturbed on appeal in the absence of an abuse of that discretion. State v. Kelly, 362 So.2d 1071 (La.1978), cert. denied, 439 U.S. 1118, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979); State v. Johnson, 453 So.2d 279 (La.App.2d Cir.1984); State v. Wiley, supra. A trial court's ruling with respect to the admissibility of allegedly gruesome photographs will only be disturbed if the prejudicial effect of the photographs clearly outweighs their probative value. State v. Tonubbee, 420 So.2d 126 (La.1982), cert. denied, 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342, reh. denied, 462 U.S. 1146, 103 S.Ct. 3132, 77 L.Ed.2d 1381 (1983).
A defense stipulation to the fact and cause of death necessarily bears upon the balancing of probative value against prejudicial impact, but the decision remains one for the trial court. State v. Sterling, 377 So.2d 58 (La.1979). See also State v. Gilmore, 332 So.2d 789 (La.1976) and State v. Kelly, supra.
In the instant case, there are two sets of photographs in dispute. The first set contains Exhibits S-10 through S-13 and depicts Mr. Lindsey lying on the autopsy table. Exhibit S-10 is a closeup shot of the left side of the victim's face; S-11 is a similar close shot of the right side of the victim's face and his right arm; S-12 shows the left side of the victim's face and the left side and chest of the victim's body; and S-13 depicts the right side, right chest, and right shoulder of the victim's body. Each of these photographs was taken from a different position in relation to the body. None of these photographs is particularly gruesome. See and compare State v. Williams, 343 So.2d 1026 (La.1977), cert. denied, 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977); State v. Kelly, supra; State v. Lindsey, supra; State v. Tonubbee, supra.
The second set of photographs depicts Mrs. Lindsey after the attack. Exhibit S-20 is a full shot of Mrs. Lindsey, clothed, and sitting with her legs crossed under her in a hospital bed. Exhibits S-21 and S-22 are closeup facial shots: S-21 presents a frontal view and S-22 presents a side view.
Each photograph provides information which was relevant to the issues at trial. Defendant has not shown the photographs to be either unduly prejudicial or repetitive. We have reviewed these photographs and find that they are not so gruesome that their probative value is outweighed by possible prejudice to the defendant. The trial court did not abuse its discretion in allowing admission of these photographs. See and compare State v. Landry, supra; State v. Wiley, supra; State v. Kelly, supra.
These assignments are without merit.
Assignment of Error Nos. 1, 8, and 12: Irrelevant Evidence
In these assignments, defendant challenges the trial court rulings that it was irrelevant whether (1) anyone else had been arrested in connection with the case, and (2) Deputy Padgett had personally arrested anyone else in connection with the case.
Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LSA-C.E. Art. 401. Evidence which is not relevant is not admissible. LSA-C.E. Art. 402.
The trial court has wide discretion in determining the relevancy of evidence and its determination will not be overturned absent a clear abuse of discretion. State v. Huizar, 414 So.2d 741 (La.1982); State v. Allen, 440 So.2d 1330 (La.1983).
At issue in the case at bar is whether Clarence Hicks committed the offense of first degree murder. Evidence about the existence or identity of another *945 person "arrested in connection with" this case tends to neither prove nor disprove whether Hicks committed any element of this offense. The existence of co-defendants or other persons charged with separate crimes arising out of the same incident has no bearing on whether Hicks committed the crime of which he is accused. We find that the trial court properly ruled that this testimony was irrelevant.
Defendant also contends that the trial court should have disallowed irrelevant testimony about the general activities of liquor salesmen in order to show the activities of Mr. Lindsey on the night he was killed. We agree that this testimony did not tend to prove the existence of any fact of consequence, and was therefore admitted in contravention of LSA-C.E. Arts. 401 and 402. However, a judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity or variance which does not affect substantial rights of the accused. LSA-C.Cr.P. Art. 921. Error if made by the trial court, is not fatal unless the defendant demonstrates prejudice. State v. Humphrey, 412 So.2d 507 (La.1981); State v. Allen, supra; State v. Jackson, 545 So.2d 1228 (La.App.2d Cir.1989), writ denied, 550 So.2d 634 (La.1989). A reversal and a new trial are called for only if there is a reasonable possibility that the error complained of might have contributed to the conviction. State v. Hocum, 456 So.2d 602 (La.1984); State v. Gibson, 391 So.2d 421 (La.1980).
While we agree that the testimony of Mr. Coreman did not appear to address any fact "of consequence to the determination of the action" and was not relevant, neither the record nor the defendant indicates that this testimony affected any of defendant's substantial rights. Likewise, defendant presents and we find no basis for said testimony to be prejudicial, or for the assumption that a reasonable possibility existed that the error complained of might have contributed to his conviction. Error if made by the trial court, is not fatal unless the defendant demonstrates prejudice. State v. Humphrey, supra; State v. Allen, supra. Accordingly, we find this error harmless.
These assignments are without merit.
Assignment of Error No. 2: Lay Witness Opinion
Defendant challenges the admission of Deputy Cowan's testimony that a stain on the parking lot depicted in a photograph is human blood. In brief, defendant asserts that the trial court ruling which allowed this testimony was prejudicial to defendant and denied him a fair and impartial trial, but he provides no basis for this assertion.
Generally, a witness may testify only to facts within his knowledge and may not testify as to any impression or opinion that he may have. However, where the subject of the testimony is such that a person of ordinary experience may make a natural inference from observed facts, a lay witness may testify as to such inferences. In such cases, the witness must state the observed facts upon which the inference is based. State v. Moten, 510 So.2d 55 (La.App. 1st Cir.1987), writ denied, 514 So.2d 126 (La.1987); State v. Hallal, 544 So.2d 1222 (La.App.3d Cir.1989), reversed on other grounds, 557 So.2d 1388 (La.1990).
An expert witness or scientific analysis is not required to identify blood under all circumstances. Blood is such a common thing that a lay witness may properly testify that he recognizes it as such. State v. Lee, 340 So.2d 1339 (La.1976), cert. denied, 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260 (1977); State v. Vincent, 338 So.2d 1376 (La.1976); State v. Skipper, 284 So.2d 590 (La.1973).
In the instant case, Deputy Cowan gave a full explanation of the facts which formed the basis for his conclusion that the stain was human blood. The record reveals that his ordinary experience as a law enforcement officer was a sufficient basis for the inference he made from facts which he observed.
We note that the pictures of the crime scene which depict the bloodstain in question, were admitted into evidence without objection. Similarly, Deputy Cowan referred *946 to the stain as blood twiceonce before and once afterthe testimony to which defendant objected. On these facts, we find no abuse of the trial court's discretion in allowing the evidence, and no prejudice to defendant as a result of its admission into evidence.
This assignment is without merit.
Assignment of Error No. 5: Expert Witness Opinion
Dr. George McCormick, a forensic pathologist and coroner for Caddo Parish, was the physician who conducted the autopsy on the victim. He was tendered by the state as an expert in forensic pathology and was so accepted by the defense. In his fifth assignment of error, defendant complains that Dr. McCormick was erroneously allowed to give his opinion as to whether Mr. Lindsey's injuries could have been inflicted by a pair of shoes which had not yet been admitted into evidence.
If scientific, technical, or other specialized knowledge will assist the trier-of-fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. LSA-C.E. Art. 702.
In a criminal case, every expert witness must state the facts upon which his opinion is based, provided, however, that with respect to evidence which would otherwise be inadmissible such basis shall only be elicited on cross-examination. LSA-C.E. Art. 705(B).
A physician testifying as an expert may properly give an opinion as to the probable manner in which a wound or other traumatic injury was inflicted where such testimony is based on facts within the expert's knowledge. State v. White, 298 So.2d 733 (La.1974); State v. Beck, 445 So.2d 470 (La.App.2d Cir.1984), writ denied, 446 So.2d 315 (La.1984); State v. Brown, 478 So.2d 600 (La.App.2d Cir.1985).
In the instant case, Dr. McCormick was qualified as an expert in forensic pathology and a physician. The record reflects that his testimony was in compliance with LSA-C.E. Arts. 702 and 705(B). McCormick testified that the victim's bruises were consistent with the pattern on the bottom of the shoes. The shoes were subsequently admitted, without objection, as evidence which was recovered from Hicks. See and compare, State v. Mims, 524 So.2d 526 (La.App.2d Cir.1988), writ denied, 531 So.2d 267 (La.1988). Finally, Hicks himself testified that he stomped Mr. Lindsey with shoes which were similar to those used during McCormick's testimony.
Defendant cites no statutory or jurisprudential support for his position that this ruling was in error. We find that this testimony was properly allowed by the trial judge.
This assignment is without merit.
Assignments of Error Nos. 3, 9, and 10: Hearsay
During cross-examination, defense counsel asked Deputy Cowan whether Charity Harris, the owner of Charity's Place, remembered the Lindseys as being in her bar. The state objected and argued that this question called for hearsay testimony. The trial court sustained the objection. Defendant challenges this ruling, asserting that the testimony is admissible to prove that the statement was made, rather than to prove the truth of the statement itself.
Hearsay is a statement other than one made by the declarant while testifying at the present trial or hearing offered in evidence to prove the truth of the matter asserted. LSA-C.E. Art. 801.
If a statement is not introduced to prove the truth of the matter asserted, then that statement, by definition, is not hearsay. LSA-C.E. Art. 801. See also, State v. Bean, 582 So.2d 947 (La.App.2d Cir.1991), writ denied, 586 So.2d 567 (La.1991); State v. Veal, 583 So.2d 901 (La.App. 1st Cir. 1991). However, the mere assertion that the hearsay rule does not apply, if the statement is offered only for the fact that it was stated and not as proof of the fact in the statement, is not a correct statement of the law. Any testimony could be admitted under this reasoning by the fiction that the *947 testimony is elicited "for the mere fact it was stated" rather than for its truth. There must be some purpose in admitting the testimony other than to show the truth of the matter. See and compare, State v. Bean, supra, and State v. Veal, supra.
The question called for hearsay, and defendant has presented no reason, other than to show the truth of the matter, for the necessity of showing that Ms. Harris' statement was made.
Defendant argues that this statement should be admitted as an exception to the hearsay rule under LSA-C.E. Arts. 803(1) and 803(3). These provisions read as follows:
Hearsay exceptions; availability of declarant immaterial
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.
. . . . .
(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or his future action. A statement of memory or belief, however, is not admissible to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's testament.
The record contains no foundation to support the applicability of either of these exceptions. We are not persuaded by defendant's contention that this testimony falls within the purview of either of these exceptions to the hearsay rule. Moreover, the state never denied the Lindseys had been at Charity's place, and Mrs. Lindsey testified that she and her husband were present at the bar on the night in question. The Lindseys' presence at the bar is not in dispute and is therefore not a fact at issue. We find no error in the trial court's determination that the question called for a statement of inadmissible hearsay.
In assignments of error numbers 9 and 10, defendant challenges other trial court rulings that testimony sought by defense counsel was hearsay. Defense counsel questioned Deputy Gehlen Padgett concerning his knowledge, as chief investigator of the case, about (1) the arrest or charges against someone other than Hicks in connection with this robbery, and (2) the existence of evidence that the robbery was committed by someone other than Hicks as calling for a hearsay answer. The trial court sustained the state's objections to this line of questioning.
As explained in the discussion of the previous assignment of error, it was irrelevant whether any other persons were charged with crimes arising out of this incident. The questions also called for a hearsay answer and were properly rejected by the trial court.
Although the question posed by defense counsel did require Deputy Padgett to relay a specific out of court declaration, the information sought was a product of hearsay. The trial court stated that defense counsel could ask questions about Padgett's personal knowledge of others involved in the robbery, but disallowed such personal knowledge of arrests as irrelevant. In our discussion of assignment of error number 8, infra, we have already determined that the testimony sought regarding others who were arrested for, or charged with, offenses in connection with these facts is irrelevant.
We find that the trial judge properly disallowed this testimony as hearsay. These assignments have no merit.
Assignment of Error No. 11: Contempt
Here, defendant asserts that the trial court committed error when it threatened defense counsel with contempt charges for attempting to state reasons for his objection to the ruling of the court.
The trial court has the duty to require that criminal proceedings be conducted *948 with dignity and in an orderly and expeditious manner, and to control the proceedings such that justice is done. LSA-C.Cr.P. Art. 17. The authority to punish for contempt of court is an inherent power of the court, essential to the preservation of dignity and authority of our courts. This power is conferred not only to aid the court in the exercise of its jurisdiction and the enforcement of its lawful orders, but also as a means of accomplishing the court's duty to require order and dignity in the proceedings. This power, however, must be used with great care so as not to obstruct the advancement of causes before the court. See Kidd v. Caldwell, 371 So.2d 247 (La.1979); State v. Williams, 355 So.2d 1291 (La.1978).
During discussion and argument of legal issues, and outside the presence of the jury, the trial court stated to defense counsel:
Mr. Clark, the next time that you argue something to this Court after the Court has ruled, I will have to consider contempt.
The defendant does not allege that this alleged "threat" resulted in any actual prejudice to his case. In brief, defendant states, "If counsel for defendant had failed to state his reasons for objecting to the court's ruling, the right to raise this assignment of errors would have been lost." (Emphasis added.) Defendant does not argue that he was unable to raise any particular assignment of error or to give the basis for any objection as a result of the court's statement.
An examination of the record reveals that this statement occurred once defense counsel continued to argue to the trial court after a ruling had been made. Prior to the ruling, defense counsel had extensively explained the defendant's position and made clear his basis for objection to the court's ruling. Furthermore, the trial court properly admonished defense counsel while the jury was outside the courtroom. This assignment of error is without merit.
Assignment of Error No. 14: Errors Patent
We have reviewed the record for errors patent and found none.

CONCLUSION
For the foregoing reasons, we find harmless error in assignment number 1, and no error as to the remaining fifteen assignments. Defendant's conviction is affirmed.
AFFIRMED.