792 So.2d 793 (2001)
STATE of Louisiana, Appellee,
v.
Eric Wayne COLLIER, Appellant.
No. 34,774-KA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2001.
English & Lester, by Larry English, Shreveport, Counsel for Appellant.
*794 Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Eugene W. Bryson, III, Tommy J. Johnson, Michael W. Powell, Assistant District Attorneys, Counsel for Appellee.
Before BROWN, WILLIAMS & PEATROSS, JJ.
PEATROSS, J.
Defendant, Eric Wayne Collier, was found guilty as charged by a 10-2 jury on one count of possession of more than 400 grams of cocaine, and having been adjudicated a second felony offender and subjected to an agreed sentence of 30 years at hard labor without benefits and a fine of $250,000. Defendant now argues on appeal that the trial court erred in denying the defense motion to suppress Defendant's confession. For the reasons stated herein, Defendant's conviction and sentence are affirmed.

FACTS
On November 29, 1997, Defendant committed a minor traffic violation by rolling through a stop sign. After a lengthy, high speed pursuit, Defendant drove into the parking lot of the Pelican Inn hotel on Monkhouse Drive in Shreveport, circled the lot several times and drove away again. After a few blocks, he stopped at the intersection of Monkhouse Drive and Hollywood. A search of his person, incident to arrest, disclosed large amounts of cash in his pockets. The arresting officer, Eric Farquhar, advised Defendant of his Miranda rights.
Defendant consented to a search of his vehicle, but no contraband was found. While Defendant was being processed at the scene of the stop, the manager of the Pelican Inn delivered to the police a backpack which a guest had seen Defendant throw from his car while in the parking lot. The backpack contained a large quantity of narcotics plus more money.
At the police station, the officers determined that Defendant had been in possession of 637.8 grams of cocaine and $6,332 in cash. Drug Enforcement Administration ("DEA") and Task Force Agents ("TFA") were contacted to assist.
At the hearing on the motion to suppress, TFA Russell Sarpy testified, verifying that Defendant understood his Miranda rights. Initially, Defendant refused to talk about the incident; however, as he was being taken to be booked into the jail, he requested to speak in private to TFAs Sarpy and J.P. Gallion. According to both TFA Sarpy and Gallion, after being placed in a private room, Defendant said he was willing to cooperate. TFA Sarpy testified that he again advised Defendant of his Miranda rights; and, thereafter, in response to questioning, Defendant admitted the backpack and its contents belonged to him. During the interview, Defendant identified his suppliers of narcotics and described in great detail how and where he obtained the cocaine that he had been selling for six months. Defendant also named several people in the Shreveport area who were buying cocaine from him in quantities indicating they were for resale.
The defense moved to suppress Defendant's detailed confession. The motion alleged that the confession was obtained "after defendant invoked his right to remain silent, and/or ... was the result of promises and inducements;" and, therefore, the confession was not freely and voluntarily given. The motion for new trial contained essentially the same claims. The trial court denied the motion after a contradictory hearing.

DISCUSSION
Defendant, based on his own self-serving testimony, submits that the statements *795 that he sought to suppress were actually made several weeks after the arrest when TFAs Sarpy and Gallion visited Defendant at the Caddo Correctional Center ("CCC"), rather than the same night of his arrest. The main thrust of the argument is that, after Defendant invoked his right to remain silent, TFAs Sarpy and Gallion threatened Defendant by being federal agents and by talking about legislation which might lead to a life sentence for persons convicted of drug trafficking offenses. He argues that the agents repeatedly told him that he was going to jail for 60 years to life and that he was induced by those statements to confess.
The State presented a different version of events surrounding the taking of Defendant's statement/confession. According to the State, after Defendant initially invoked his right to remain silent, he reinitiated the discussion by asking to speak with TFAs Sarpy and Gallion in private; there were no threats or promises, other than a statement that the district attorney would be advised of Defendant's level of cooperation. While they admit that they visited Defendant at CCC approximately two weeks after his arrest, both TFA Sarpy and Gallion testified that Defendant provided the confession and other information during the interrogation following his request to talk with them in private, which occurred on the same night as his arrest at the police station. According to the agents, Defendant did not provide any information, i.e., there was no interrogation, during the visit at CCC.
The law is that, at a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Rogers, 476 So.2d 942 (La.App. 2d Cir.1985).
Before a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La.C.Cr.P. art. 703(D). The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Walker, 28,577 (La. App.2d Cir.10/4/96), 681 So.2d 1023. Spontaneous and voluntary statements made while the defendant is in custody and not given as a result of police interrogation or compelling influence are admissible as evidence even when made without the Miranda warning. State v. Robinson, 384 So.2d 332 (La.1980); State v. Reed, 499 So.2d 132 (La.App. 2d Cir.1986).
Interrogation is "... questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom or action in any significant way." Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Interrogation includes words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
There is a difference between police-initiated custodial interrogation and communications, exchanges or conversations initiated by the accused himself. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The latter are admissible without regard to the Miranda warning. State v. Fuller, 32,734 (La.App.2d Cir.12/17/99), 759 So.2d 104, writ denied, 00-0159 (La.8/31/00), 766 So.2d 1273.
A trial court's determination on the credibility and weight of testimony relating *796 to the voluntariness of a confession will not be overturned unless clearly contrary to the evidence. State v. Hicks, 607 So.2d 937 (La.App. 2d Cir.1992).
The parties stipulated that Officer Farquhar advised Defendant of his Miranda rights at the time of the lawful arrest and that the officers who were on the scene made no promises, threats or inducements to entice Defendant to make a confession. Further, the parties agreed that the issue regarding the voluntariness of Defendant's statements began at the point in time when TFAs Sarpy and Gallion interviewed Defendant at the police station.

Testimony at the hearing on the motion to suppress
TFA Sarpy testified that he was on the drug task force on the date of this incident with Defendant, November 29, 1997. After being briefed on the situation by Officer Farquhar, TFA Sarpy spoke with Defendant in a small room at the police station. Officer Farquhar, TFA Gallion and a third officer also were present. Officer Farquhar advised Defendant of his Miranda rights from a standard issue card. Defendant said he understood his rights, but also stated that he did not want to make a statement. TFA Sarpy then told Officer Farquhar to book Defendant.
As the officers were escorting Defendant to the elevator, Defendant said he wanted to cooperate, but he wanted to talk only with TFAs Sarpy and Gallion. The three went into the small room again and TFA Sarpy testified that he gave Defendant another Miranda warning. According to TFA Sarpy, the only promise made to Defendant was that TFA Sarpy would inform the district attorney if Defendant fully cooperated. TFA Sarpy further testified that Defendant never asked for an attorney and he never indicated that he did not understand his rights. He was fully aware of what he was doing and cooperated voluntarily. Defendant then gave a detailed description of his dealings with his suppliers and with his larger clients. Defendant never indicated that he wanted to terminate the interview before it was completed. Finally, Defendant admitted that the money and cocaine in the backpack were his. TFA Sarpy stated that all of this occurred before Defendant was taken upstairs to the Shreveport jail.
On cross examination, TFA Sarpy agreed that he had made a trip to CCC to interview Defendant about two or three weeks after the arrest. As previously stated, however, the only result of that interview was that Defendant declined to talk anymore. TFA Sarpy testified that he did not discuss with Defendant what charge would be filed against him at that time. TFA Sarpy testified, however, that he had told Defendant on the night of arrest that he would be charged with possession with intent to distribute which, in the federal system, meant "pretty serious time." TFA Sarpy admitted that he also told Defendant that the State was trying to pass a law under which possession with intent could result in a life sentence. TFA Sarpy denied having ever asked Defendant if he preferred to go to jail for 30 or 40 years rather than 5 years. He also denied telling Defendant that he was looking at a minimum sentence of 30 years. TFA Sarpy stated that he told Defendant, during the confession interview on the night of the arrest, that his cooperation would include telling the truth about the events of the arrest. TFA Sarpy, however, denied ever telling Defendant specifically what Defendant must say in order to be cooperative.
TFA Gallion testified that he accompanied TFA Sarpy to the City Jail. He corroborated TFA Sarpy's rendition of the events of the night of the arrest, including *797 that Defendant requested to speak with the two agents in private and that, prior to giving any statement, Defendant was again advised of his Miranda rights. In TFA Gallion's opinion, Defendant's statement was given freely and voluntarily.
Officer Farquhar testified that Defendant was advised of his rights while he was being transported to the City Jail following his arrest and again at the police station. Although Officer Farquhar testified that he was not present during the interrogation of Defendant by TFAs Sarpy and Gallion, he corroborated the events leading up to that interrogation, including the fact that contact was initiated by Defendant.
Defendant also testified at the hearing and stated that Officer Farquhar advised him of his rights, which he understood; but Defendant told the officers that he did not wish to talk. Thereafter, TFAs Sarpy and Gallion "guaranteed" Defendant was going to get 60 years, but told him that they would help him if he "cooperated."
According to Defendant, as he was being taken upstairs to be booked, TFAs Sarpy and Gallion pulled him over into a small room and asked him if he wanted to talk. There were people walking in and out of the room and there was also a person, other than Defendant, chained to a chair in the interview room. Defendant testified that he told the officers that they must be trying to get him killed attempting to get him to "snitch" with all of the other people around and for that reason the three went into a private room to talk.
Defendant argues that, when TFAs Sarpy and Gallion took him into the interview room, they did not advise him of his rights. He claims that TFA Sarpy showed him a book that said he would get 60 years in prison for the offense with which he was charged. Defendant maintains, however, that he did not "talk" to the agents that night.
Defendant testified that the interview reflected in TFA Sarpy's report took place at CCC. He claims that the agents did not read him his rights during that visit, but just started asking him questions. Defendant testified that the agents cursed at him, called him a liar and told him again that he would go to jail for 60 years unless he cooperated. At that point, Defendant testified that he "talked," but he still denied having ever said anything about the backpack or what was in it and he maintained that he never said it belonged to him. Defendant testified that he only talked about persons named by TFAs Sarpy and Gallion; he did not offer any names of other drug dealers. Further, Defendant denied having made many of the statements recorded by TFA Sarpy in his report of the interrogation. Significantly, Defendant denied having ever engaged in drug trafficking with the persons named in the report; and, while he stated that he had eventually admitted ownership of the backpack to the officers during questioning, he still had denied having ever admitted ownership of the money or cocaine contained in the backpack.
After rebuttal testimony from the State, the trial judge noted that this confession could have been documented better, as to when it began and ended, and the agents could have used a rights card to record that Defendant refused to sign. The trial court was convinced, however, that Defendant had been advised of his Miranda rights and that Defendant initiated the conversation with TFAs Sarpy and Gallion after he initially declined to talk with them. Further finding that the evidence did not support Defendant's version that he was contacted at CCC after counsel was appointed, the trial court concluded that the more credible evidence was that the confession was made on November 29, 1997, and not on a subsequent visit at *798 CCC. Ultimately, the trial court ruled that the evidence did not support suppression of Defendant's confession.
As defense counsel noted in his brief, "if the issue in this case were to be resolved purely on credibility, defendant versus Officer Eric Farquhar and Agents Sarpy and Gallion deference to the trial judge might prompt a decision against the defendant, Collier." Having reviewed the testimony, and giving appropriate deference to the trial judge's determination of credibility, we find that those matters demand a decision against the Defendant. The evidence shows that Defendant was advised of his rights three times before he made his confession. Defendant made his statement after initiating the discussion with TFAs Sarpy and Gallion. The trial court's determination on the credibility and weight of the testimony relating to the voluntariness of this confession is not clearly contrary to the evidence. We conclude, therefore, that the trial court did not err in denying Defendant's motion to suppress and thereby allowing the confession to be admissible at trial.

Error Patent Review
Error patent review disclosed that the trial court informed Defendant that he had three years to apply for post-conviction relief. The correct period is two years. La.C.Cr.P. art. 930.8. Defendant should have been advised by the trial court, and is now advised by this court's opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922. The Louisiana Supreme Court has held that La. C.Cr.P. art. 930.8(C), which requires the trial court to inform the defendant of the limitations period for filing an application for post conviction relief, is supplicatory language and does not bestow an enforceable right upon an individual defendant. State ex rel Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189.

CONCLUSION
For the foregoing reasons, Defendant's, Eric Wayne Collier, conviction and sentence are affirmed.
AFFIRMED.