909 So.2d 23 (2005)
STATE of Louisiana, Appellee
v.
Vernon CALLIER, Appellant.
No. 39,650-KA.
Court of Appeal of Louisiana, Second Circuit.
July 27, 2005.
*25 Carey J. Ellis, Louisiana Appellate Project, for Appellant.
James D. Caldwell, District Attorney, Linda K. Watson, Anita T. Mack, Assistant District Attorneys, for Appellee.
*26 Before GASKINS, CARAWAY and LOLLEY, JJ.
GASKINS, J.
The defendant, Vernon Callier, appeals his convictions for three counts of armed robbery and his sentences of 70 years at hard labor without benefit of parole, probation, or suspension of sentence on each count, to be served concurrently. The convictions and sentences are affirmed.

FACTS
On September 25, 2001, two masked men entered a Conoco station in Tallulah. One of the men carried a sawed-off shotgun and wore a turquoise bandana, black cap or mask, and a dark jacket. The other man was armed with a stick and carried a duffel bag which he filled with cigarettes, liquor, and Black & Mild cigars. Annie Allen, the cashier, testified that they took approximately $63.00 from the cash register. The men demanded that a customer in the store, Rev. Fred Jones, hand over his wallet. Another store patron, who was not available to testify at the trial, was also robbed.
Darshelle Grigsby drove into the station to buy gas while the robbery was in progress. She left her two children in her van and walked toward the store to pay. When she saw that the store was being robbed, she ran. The gunman chased her to the van and stole her purse.
Tallulah police received a tip that Vindey Walker was involved in these offenses. He confessed that he and the defendant entered the store and committed the robbery. Walker stated that he carried the duffel bag while the defendant was armed with a sawed-off shotgun. Another accomplice, Ben Hawkins, drove the getaway car and waited nearby to pick up Walker and the defendant after the robbery.
Tallulah police officers arrested the defendant at his house, in possession of some of the stolen merchandise. The sawed-off shotgun was found in a later search of the yard. The defendant was charged with three counts of armed robbery.
Following a trial by jury, the defendant was convicted as charged on all three counts of armed robbery. A motion for new trial was denied. The defendant was adjudicated a second felony offender and was sentenced to 70 years at hard labor without benefit of parole, probation, or suspension of sentence for each count.[1] The sentences were ordered to be served concurrently. The trial court stated that the defendant was not entitled to credit for time served because the defendant's parole on a prior armed robbery conviction had been revoked upon his arrest for the current charges. The court cited La. R.S. 15:571.3 in ruling that the sentence was not subject to diminution for good behavior.
The defendant appealed his convictions and sentences. He argues that the evidence was insufficient upon which to base his convictions, that his inculpatory statements should have been suppressed, that the state failed to prove that he was a habitual offender, and that the sentences imposed were excessive.

SUFFICIENCY OF EVIDENCE
The defendant contends that there was insufficient evidence upon which to base his convictions. He claims that the version of events testified to by Walker and Hawkins was suspect in that they worked out plea agreements with the state in order to reduce their sentencing *27 exposure. The defendant asserts that Walker and Hawkins, who are cousins, had a very real incentive to be untruthful. The defendant contends that he was not involved in these offenses.
Although the record does not reflect that the defendant filed a motion for post verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App. 2d Cir.2/26/97), 691 So.2d 1273.
In any review of sufficiency, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Ultimately, all evidence  both direct and circumstantial  must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. State v. Hopkins, 39,258 (La.App. 2d Cir.3/2/05), 897 So.2d 854.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App. 2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
A jury may convict upon an accomplice's uncorroborated testimony. State v. Matthews, 450 So.2d 644 (La. 1984); State v. Hopkins, supra. An accomplice is qualified to testify against an associate in crime even if the prosecutor offered him inducements to testify; such inducements merely affect the witness's credibility. State v. Neal, XXXX-XXXX (La.6/29/01), 796 So.2d 649, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Jetton, 32,893 (La.App. 2d Cir.4/5/00), 756 So.2d 1206, writ denied, XXXX-XXXX (La.3/6/01), 787 So.2d 299; State v. Hopkins, supra. A conviction may be based even on the uncorroborated testimony of an accomplice or of someone making an agreement with the prosecution, provided the testimony is not incredible or otherwise insubstantial on its face. State v. Neal, supra.
Armed robbery is defined in La. R.S. 14:64 as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
Annie Allen, the cashier at the Conoco station, testified that on the evening of the robbery, the assailants broke through the door and announced a hold up. One assailant wore a turquoise bandana obscuring his face, a black jacket, and he carried a sawed-off shotgun. The other assailant also wore a face covering and carried a stick and a duffel bag. The gunman told Allen to put her hands up and he demanded the money in the cash register. Approximately $63.00 was taken. The assailant with the duffel bag took cigarettes and liquor, as well as Black & Mild cigars in the display cartons.
Ms. Allen testified that two patrons inside the store were also robbed. During the robbery, a customer who drove up to buy gas was accosted by the gunman. Ms. Allen identified the gun, the stick, the blue bandana, and the jacket. She also identified the Black & Mild cigars in the display *28 containers and other items taken in the robbery that were recovered from the defendant.
Rev. Jones testified that he went into the store to get a newspaper and as he was leaving the store, the assailants entered. Both assailants were tall. The gunman was slightly taller than his accomplice. One man pointed a gun at Jones and demanded his money and his wallet. The other assailant had a black duffel bag which he filled with cigarettes, liquor, and Black & Mild cigars. According to Rev. Jones, one of the assailants called the other "cuz" twice.
Darshelle Grigsby testified that on the evening of the robbery, she went to the Conoco station to buy gas. She left her two children in the van while she went inside to prepay. She observed the robbery in progress and ran back to her van. The gunman came after her and took her money and her purse. She identified her purse that was recovered in the course of the investigation of these offenses.
Detective James Rash of the Tallulah Police Department testified regarding his investigation of these offenses. He stated that he was called to the Conoco station on September 25, 2001, at about 9:00 p.m. He recounted the description of the assailants and the details of the robbery given by the victims. A stick which was carried by one of the robbers was recovered at the scene.
On September 29, 2001, Detective Rash got an anonymous tip that Walker had been boasting about committing the robbery. Walker was brought in for questioning, given his rights, and admitted that he was the individual who carried the stick. He also stated that the defendant carried the gun. He said that they disposed of Rev. Jones' wallet under a church and hid Ms. Grigsby's purse in a hole in the floor of his house. Walker later led Detective Rash to the church where Rev. Jones' wallet was located. Ms. Grigsby's purse was found in the hole in the floor where Walker said it would be. Although he did not initially mention Hawkins, Walker later disclosed that Hawkins drove the getaway car. Walker's version of the incident matched that of the victims. Detective Rash testified that the defendant and Walker were tall and thin and matched the description of the individuals who robbed the store. Hawkins was shorter and heavier.
According to Detective Rash, the defendant was arrested on September 29, 2001, at a house where he lived with his brother. The defendant was lying on a bed with loot from the robbery, a dark coat that had a light blue bandana in the pocket, and a black knit cap. The display boxes for the cigars were present. The defendant's brother gave permission to search the house. The gun was not found at that time, but officers returned to the house later and found the gun in the yard under a pile of wood. There were no identifiable fingerprints on the gun.
In exchange for his testimony against the defendant, Walker was allowed to plead guilty to armed robbery and was sentenced to twelve years at hard labor. Walker stated that on the date of the robbery, he and Hawkins picked up the defendant at his house. The defendant furnished the materials for committing the robbery. Hawkins dropped the defendant and Walker off near the Conoco station. The defendant carried a shotgun and Walker carried a stick and a duffel bag.
Walker stated that there were three people in the store, but did not notice whether they were robbed. He saw the defendant chase down Ms. Grigsby who drove up outside during the robbery. Following the robbery, Walker and the defendant *29 ran to Hawkins' waiting automobile and went to Walker's house to divide the loot. While they were separating the items taken in the robbery, the defendant came out of the bathroom with a wallet and a purse. In court, Walker identified items taken in the robbery which were recovered at the defendant's house.
Ben Hawkins testified against the defendant. He stated that Walker, who is his cousin, asked him to help with a store robbery and enlisted him to drive the getaway car. The plan called for the defendant and Walker to go into the store. The defendant and Walker were dressed in black with bandanas over their faces. The defendant had a light blue bandana. Hawkins stated that he dropped Walker and the defendant off close to the Conoco station and drove around the block. He then saw the pair running to the car.
Walker had a duffel bag and the defendant had a sawed-off shotgun. They went to Walker's sister's house and divided the loot which included Black & Mild cigars, cigarettes, liquor, and a small amount of money. Hawkins suggested that the gun be taken back to the defendant's house. Hawkins identified the gun and the bandana that the defendant used in the robbery.
Hawkins was charged as an accessory after the fact in these offenses. He also had a pending charge of simple burglary. In exchange for his testimony against the defendant, he received a six-year hard labor sentence on the simple burglary charge and all charges connected with the present offenses were dropped. He served two and one-half years on the simple burglary charge and was paroled.
While the defendant was incarcerated at the Madison Parish Detention Center, he made inculpatory statements regarding the offenses to officers at the facility. He discussed the robberies and described his actions in detail. The officers thought that the defendant had already been to trial because he spoke so freely about the incident. The officers did not immediately report the confession because they did not realize until later that the case was pending.
The evidence adduced in this case was more than sufficient to convict the defendant of three counts of armed robbery. The testimony given by the victims and the defendant's accomplices was consistent. The defendant fit the description of the gunman in this case. Shortly after the robbery, the defendant was found with clothing used in the robbery as well as items taken. Although the defendant argues that these items were common things that might be found in any household, the cigars found in the defendant's possession included the store display containers. These are items not normally sold with cigars. Further, the sawed-off shotgun used in the offenses was found in the defendant's yard. The gun was identified as the one used in the robbery by the victims and by Walker and Hawkins. Two corrections officers testified that while being held pending trial, the defendant admitted committing the robbery and chasing Ms. Grigsby.
The defendant points out that one of the assailants called the other "cuz," a term more appropriate for Walker and Hawkins who were cousins. He alleges that the offenses were committed by Walker and Hawkins and that they were falsely accusing him of being involved. However, the description of the assailants matches that of the defendant and Walker, not Hawkins. The evidence, when viewed in the light most favorable to the prosecution, is sufficient to support the convictions. The defendant's claim that there was insufficient evidence upon which to base his convictions is without merit.

*30 INCULPATORY STATEMENTS
The defendant argues that the trial court erred in failing to suppress the inculpatory statements that he made to the corrections officers. As discussed above, while housed at the Madison Parish Detention Center, the defendant made statements to corrections officers admitting his involvement in these offenses. He claims that the statements were the result of interrogation by the corrections officers without the advisement or waiver of his constitutional rights under Miranda.
At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Collier, 34,774 (La.App. 2d Cir.6/20/01), 792 So.2d 793, writ denied, 2001-2199 (La.6/7/02), 817 So.2d 1142.
Before what purports to be a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D). The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Walker, 28,577 (La.App. 2d Cir.10/4/96), 681 So.2d 1023; State v. Collier, supra. Spontaneous and voluntary statements made while the defendant is in custody and not given as a result of police interrogation or compelling influence are admissible as evidence even when made without the Miranda warning. State v. Robinson, 384 So.2d 332 (La.1980); State v. Collier, supra.
Interrogation is "... questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Robinson, supra. Interrogation includes words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); State v. Collier, supra.
There is a difference between police-initiated custodial interrogation and communications, exchanges or conversations initiated by the accused himself. State v. Fuller, 32,734 (La.App. 2d Cir.12/17/99), 759 So.2d 104, writ denied, XXXX-XXXX (La.8/31/00), 766 So.2d 1273. The latter are admissible without regard to the Miranda warning. State v. Collier, supra.
A trial court's determination on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned unless clearly contrary to the evidence. State v. Hicks, 607 So.2d 937 (La.App. 2d Cir.1992); State v. Collier, supra. In determining whether a ruling on a motion to suppress is correct, an appellate court is not limited to evidence adduced at the hearing on the motion but also may consider pertinent evidence given at trial. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993).
The defendant was advised of his Miranda rights at the time of his arrest and when he was taken to the Madison Parish Jail. The defendant discussed the details of the robbery approximately a month or two after he arrived at the Madison Parish Detention Center.
At the motion to suppress the defendant's confession, Deputy Raymond Sims stated that during a general conversation, *31 the defendant went into detail regarding the robbery and chasing Ms. Grigsby outside the store. Deputy Sims stated that the defendant was not being interrogated and that he was free to leave the area at any time. The defendant made his statements in front of several deputies and another inmate. Deputy Sims stated that he did not initiate the conversation with the defendant. He said that he thought the defendant had worked out a deal because of the way he was talking about the offenses.
Deputy Ronnie Mitchell testified at the hearing on the motion to suppress that he was also present when the defendant confessed to the offenses. He stated that the defendant had mentioned his participation in the robbery to another deputy and he was called out by Sims. The defendant then went into detail regarding the commission of the offenses. Deputy Mitchell said that the defendant was not interrogated about the robbery. He stated that the defendant's comments were made while the officers and inmates were "shooting the breeze" and that a lot of inmates brag about their crimes after they have been to court. He testified that the defendant's comments were voluntary and were spoken so freely that he assumed that the defendant had already been to trial for the case.
The defendant's statements were not made during an interrogation by the deputies. The state carried its burden of showing that the confession was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. Accordingly, the trial court did not err in finding the confession to be admissible.

HABITUAL OFFENDER ADJUDICATION
Following his convictions for three counts of armed robbery, the state charged the defendant under the Habitual Offender Law of La. R.S. 15:529.1 as a second felony offender, having been previously convicted of armed robbery on October 14, 1996. The defendant argues that the state failed to present sufficient evidence to support his adjudication as a habitual offender. He claims that the minutes and record do not show that there was an arraignment on the habitual offender bill of information. He also states there are no written reasons for the trial court's ruling on his habitual offender status. He claims that it cannot be determined from the record whether he was represented by counsel at the 1996 guilty plea or whether his plea was an informed, voluntary waiver of the three rights under Boykin. He argues that while the certified prison records ("pen pack") were offered to show identity, they were insufficient without witnesses or in-court fingerprinting.
A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty. La. C. Cr. P. art. 555. The state's burden of proof in habitual offender proceedings under La. R.S. 15:529.1 is stated in State v. Shelton, 621 So.2d 769 (La.1993):
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of *32 proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. [Footnote omitted.]
Regarding proof that the defendant is the same person as the previously convicted felon, State v. Curtis, 338 So.2d 662 (La.1976), provides:
Identification of the accused may be by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those in the prison record introduced, or by photographs contained in the duly authenticated record. This court, in State v. Hardy, 174 La. 458, 141 So. 27 (1932), considered photographs attached to the certificate of the warden of the state penitentiary sufficient evidence in themselves of identification, without the evidence of fingerprints. [Footnote omitted.]
The evidence introduced must be sufficient for the trial judge to find the defendant to be the same person as the previously convicted felon. State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir.1990). If the trial court rules that a defendant is a habitual offender, then it shall sentence him to the punishment prescribed in La. R.S. 15:529.1, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated. The court shall provide written reasons for its determination. La. R.S. 15:529.1(D)(3).[2]
The state filed a habitual offender bill of information on May 13, 2004. That bill was read by the state at the habitual offender hearing and sentencing on August 11, 2004. The defense counsel answered "we are not going to admit" the habitual offender charge, but did not object to a failure to arraign. Therefore, any defect regarding lack of arraignment is waived.
At the hearing, the state presented a copy of the October 14, 1996 transcript from the defendant's guilty plea to armed robbery and the certified "pen pack." A review of the transcript of the prior guilty plea shows that the defendant was represented by counsel and articulated a voluntary, intelligent waiver of Boykin rights. Therefore, the state met its burden of proof as stated in Shelton, supra, and the burden shifted to the defendant to produce affirmative evidence demonstrating an infringement of rights or a procedural irregularity in the taking of the plea. The defendant failed to do so. The certified "pen pack" introduced into evidence includes the defendant's name, fingerprints, and photograph. The photograph sufficiently proved the defendant's identity. See La. R.S. 15:529.1(F).[3]
*33 The evidence shows that the state carried its burden of proof that the defendant was the person who freely and voluntarily entered a plea of guilty to armed robbery in 1996 and that he was represented by counsel. The trial court did not err in adjudicating the defendant a second felony offender.

EXCESSIVE SENTENCE
The defendant argues that the sentences imposed upon him are excessive. After being convicted of three counts of armed robbery, the defendant was adjudicated a second felony offender under La. R.S. 15:529.1. He was sentenced to serve 70 years at hard labor on each count, without benefit of probation, parole, or suspension of sentence. The sentences were ordered to be served concurrently. The court specified that the sentence for count one was enhanced under the habitual offender law. The court also ordered that the sentences be served without credit for time served and without diminution for good behavior.
The defendant contends that even though there is a mandatory minimum sentence due to his adjudication as a second felony offender, the court should have reduced the sentence because it is excessive in this case. The defendant also argues that the trial court failed to consider all relevant mitigating factors in determining an appropriate sentence. He asserts that the trial court erred in imposing his sentences without credit for time served and without diminution of sentence.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Burford, 39,610 (La.App. 2d Cir.5/11/05), 902 So.2d 1190. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864; State v. Burford, supra.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light *34 of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra; State v. Burford, supra.
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B). The habitual offender law provides that if the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. La. R.S. 15:529.1(A)(1)(a). Therefore, the defendant faced a sentencing exposure of 49½ years to 198 years at hard labor without benefits for armed robbery as a second felony offender. The second felony offender sentence imposed by the trial court was in the lower to mid-range of the allowable sentences. Further, the court ordered that the sentences be served concurrently.
The defendant failed to show by clear and convincing evidence that his particular circumstances are exceptional so as to rebut the presumption that the mandatory minimum sentence is constitutional. See State v. Johnson, XXXX-XXXX (La.3/4/96), 709 So.2d 672; State v. Stephenson, 33,662 (La.App. 2d Cir.8/23/00), 766 So.2d 642, writ denied, 2000-2686 (La.8/31/01), 795 So.2d 1204. Therefore, the trial court did not err in refusing to deviate below the mandatory minimum sentence in this case.
In imposing sentence, the court noted that the defendant, born in 1978, was the youngest of five children and was married with two children of his own. He dropped out of school in the tenth grade and had a limited employment history. The court also noted that the defendant had an extensive criminal history beginning as a juvenile at age 11.
He was arrested at 17 for attempted first degree murder and armed robbery. The attempted first degree murder charge was dismissed in exchange for the defendant's plea of guilty to armed robbery in 1996. At that time, he was sentenced to serve ten years at hard labor without benefits.
The defendant was released on parole supervision in July 2000. He was a constant problem to his probation officer and was arrested for simple battery in December 2000. The record reports that he was convicted and sentenced to 12 months. The sentence was suspended and the defendant was placed on probation for 12 months.
The court noted that the defendant committed the present offenses while on felony parole and while on misdemeanor probation. The defendant refused drug testing when arrested for the present offenses, admitting that he had used marijuana. In October 2001, the defendant's parole from the 1996 armed robbery conviction was revoked and he is now serving the remainder of the sentence.
In imposing the sentence in this case, the court found that there was an undue risk that the defendant would commit another offense if placed on probation or given a suspended sentence. The court determined that the defendant was in need of correctional treatment best provided by commitment to an institution and that a lesser sentence than the one actually imposed would deprecate the seriousness of the offense.
The court observed that the defendant had a long criminal history despite his youth, including crimes of violence and crimes against the person. The court stated *35 that the defendant was not eligible for suspension of sentence. According to the court, "It is obvious to the Court that Vernon Callier has lived a life of crime and will continue to do so unless he is incarcerated for a very long time."
The court found that the robbery of the store was premeditated and that the robbery of Ms. Grigsby, who happened upon the scene, was a crime of opportunity. The court found nothing to justify the defendant's conduct. In mitigation, the court noted that the gun used in the robbery was not fired and that no one was physically injured.
The court noted that the defendant was a second felony offender and sentenced him to 70 years at hard labor on each count without benefit of parole, probation, or suspension of sentence. The court stated that the defendant was not entitled to diminution for good behavior under La. R.S. 15:571.3. The court also denied the defendant credit for time served prior to sentencing because "your parole on a prior armed robbery conviction has been revoked upon your arrest for the current charges."
The trial court adequately articulated its reasons for the sentences imposed and did not abuse its discretion. The sentences are not excessive and are tailored to both the offender and the offenses.
The trial court correctly observed that under La. R.S. 15:571.3, the defendant was not entitled to diminution of sentence for good behavior. That statute provides in pertinent part that:
Every prisoner in a parish prison convicted of an offense and sentenced to imprisonment without hard labor, except a prisoner convicted a second time of a crime of violence as defined by R.S. 14:2(13) or when the sentencing court has denied or conditioned eligibility for "good time" as provided in R.S. 15:537, may earn a diminution of sentence, to be known as "good time," by good behavior and performance of work or self-improvement activities, or both.
Because the defendant has been convicted twice for armed robbery, crimes of violence under La. R.S. 14:2(13), he is not entitled to diminution of sentence for "good time."
The court also correctly denied the defendant credit for time served. Although a defendant is entitled to credit for time served under La. C. Cr. P. art. 880, here the defendant's parole on a previous felony was revoked under La. R.S. 15:574.10. The new sentence should be served consecutively with the old unless the trial judge directs them to be served concurrently. The trial judge did not direct that the sentence for the previous felony was to run concurrently with the current sentences. Therefore, they are to run consecutively. State v. Townley, 94-1002 (La.App. 3d Cir.5/3/95), 657 So.2d 129, writ denied, 95-2371 (La.1/26/96), 666 So.2d 669. See also State v. Goodjoint, 26,246 (La.App. 2d Cir.8/17/94), 641 So.2d 730; State v. Jackson, 582 So.2d 915 (La.App. 2d Cir.1991).

CONCLUSION
For the reasons stated above, we affirm the convictions and sentences of the defendant, Vernon Callier.
AFFIRMED.
NOTES
[1] In response to an order from this count, the trial court later specified that the first count of armed robbery was the sentence enhanced by La. R.S. 15:529.1.
[2] In response to an order from this court, the trial court supplied written reasons for adjudicating the defendant a habitual offender.
[3] La. R.S. 15:529.1(F) provides:

F. The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the state of Louisiana, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate.