912 So.2d 413 (2005)
STATE of Louisiana, Appellee
v.
Jesse James CASTON, Appellant.
No. 40,054-KA.
Court of Appeal of Louisiana, Second Circuit.
September 28, 2005.
*415 Laura Pavy, Louisiana Appellant Project, for Appellant.
James D. Caldwell, District Attorney, James E. Paxton, Assistant District Attorney, for Appellee.
Before BROWN, STEWART and GASKINS, JJ.
GASKINS, J.
The defendant, Jesse James Caston, pled guilty to second degree murder, reserving his right to appeal the trial court's denial of his motion to suppress pursuant to State v. Crosby, 338 So.2d 584 (La.1976). He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. We affirm the defendant's conviction and sentence.

FACTS
On April 10, 2000, the defendant killed his wife, Angela ("Angie") Caston, by shooting her in the head with a shotgun. He then went to the home of Sharon McIntyre, a friend of Ms. Caston, with a rifle and killed her. While fleeing, he shot at Lake Providence police officers Renee Jones and Virge Hawkins.
Following his arrest in December 2000, the defendant was indicted for the first degree murder of Ms. McIntyre, the second degree murder of Ms. Caston, and two counts of attempted first degree murder as to the police officers. He was also charged with possession of a firearm by a convicted felon.[1] Subsequently, the charge in Ms. McIntyre's death was reduced to second degree murder.
The defendant filed a motion to suppress his post-arrest statements to law enforcement officers, including several in which he admitted killing Ms. McIntyre. Following a hearing, the trial court denied the motion, finding that the defendant's statements were free and voluntary.
In August 2004, the defendant entered a Crosby guilty plea to the second degree murder of Ms. McIntyre, reserving his rights as to any issue ripe for appeal in that case. The state agreed to dismiss the other charges against the defendant if this plea was affirmed on appeal. The defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Under the terms of the plea agreement and due to security concerns, the trial court directed that the defendant  a former police officer  initially be assigned to Wade Correctional Institute.

STATEMENTS TO POLICE
Pursuant to his Crosby plea, the defendant seeks review of the trial court's denial of his motion to suppress post-arrest statements that he made to law enforcement officers on several occasions in which he admitted killing Ms. McIntyre.

Law
At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Callier, 39,650 (La.App. 2d Cir.7/27/05), 909 So.2d 23.
Before what purports to be a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D). The state must also establish *416 that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Walker, 28,577 (La.App. 2d Cir.10/4/96), 681 So.2d 1023; State v. Collier, 34,774 (La.App. 2d Cir.6/20/01), 792 So.2d 793, writ denied, 2001-2199 (La.6/7/02), 817 So.2d 1142. Spontaneous and voluntary statements made while the defendant is in custody and not given as a result of police interrogation or compelling influence are admissible as evidence even when made without the Miranda warning. State v. Robinson, 384 So.2d 332 (La.1980); State v. Collier, supra; State v. Callier, supra.
Interrogation is ". . . questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Robinson, supra. Interrogation includes words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); State v. Collier, supra.
There is a difference between police-initiated custodial interrogation and communications, exchanges or conversations initiated by the accused himself. State v. Fuller, 32,734 (La.App. 2d Cir.12/17/99), 759 So.2d 104, writ denied, XXXX-XXXX (La.8/31/00), 766 So.2d 1273. The latter are admissible without regard to the Miranda warning. State v. Collier, supra; State v. Callier, supra.
Once an accused has expressed his desire to deal with the police only through counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); State v. Payne, XXXX-XXXX (La.12/4/02), 833 So.2d 927.
A court must look to the totality of the circumstances surrounding the making of the statement to determine its voluntariness. State v. Lavalais, 95-0320 (La.11/25/96), 685 So.2d 1048, cert. denied, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997). A trial court's determination on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned unless clearly contrary to the evidence. State v. Hicks, 607 So.2d 937 (La.App. 2d Cir.1992); State v. Collier, supra.

December 20, 2000 statements during lunch
The defendant was arrested at his father's home on December 20, 2000, and transported to the courthouse annex in Lake Providence. Neal Harwell, a detective with the Louisiana State Police, read the defendant his rights in the presence of Neal Horath, an investigator with the East Carroll Parish Sheriff's Department. The defendant acknowledged that he understood those rights. According to Harwell, the defendant refused to make a statement at that time, saying that "he wanted a deal." Harwell testified that he took that to mean that the defendant wanted to talk to a lawyer; consequently, he did not ask the defendant any more questions.
After the defendant declined to give a statement, Horath told the defendant, "Well, you know, if you don't wanna talk at this time, you know, we'll build a rapport with each other. Maybe one day you'll wanna talk. Maybe you'll call me."
Since it was early afternoon, the officers ordered lunch for themselves and the defendant. *417 They all ate together in a conference room. According to the officers, the defendant engaged them in conversation during the meal. When Brandon Wiltcher, an East Carroll deputy sheriff, walked near the defendant, the defendant remarked to Harwell that the "younger boys" should be taught not to wear guns around people like him. Later in the conversation, the defendant denied that he killed Ms. Caston, insisting that she committed suicide by putting the gun to her head and pulling the trigger with her toe. However, he admitted killing Ms. McIntyre, whom he described as a "bitch."
The officers agreed in their testimony that interrogation ceased when the defendant refused to waive his Miranda rights. They also concurred that while they were eating, the defendant initiated the conversation that led to his confession. Horath's statement that they talked with the defendant to build rapport so that he might one day decide to talk cannot be interpreted as interrogation. The defendant's statements were spontaneous and voluntary, not a result of interrogation or compelling influence.

January 10, 2001 statement at Hunt Correctional Center
Harwell went to the correctional facility where the defendant was being held to execute a court order to obtain a sample of the defendant's blood on January 10, 2001. The defendant said he wanted to talk. Harwell told him that he understood that the defendant had a lawyer and he was just there to get the blood. However, the defendant talked to Harwell as the nurse drew his blood. He said he killed Angie in self-defense. He then stated that he did kill "that bitch, Sharon" and he "needed some help on that." Harwell testified that he took this statement to mean that the defendant either wanted him to put in a word with the district attorney's office or some legal help.
Harwell warned the defendant that he knew that the defendant had representation and that he was not there to take a statement. The defendant ignored Harwell's cautionary advice and continued to confess. Like the trial court, we find that his statements were free and voluntary.

January 11, 2001 statement at Hunt Correctional Center
FBI agent Nathan Songer was contacted by the defendant's mother, who conveyed a request from the defendant for Songer to visit him. Songer went to see the defendant at the Hunt Correctional Center on January 11, 2001. Since the defendant initiated the meeting, Songer did not feel obliged to contact the defendant's attorney or give the defendant a verbatim recitation of his rights. However, Songer informed the defendant at the outset that anything he said would be voluntary and the defendant did not have to talk to him if he did not want to do so. At first, they discussed the places the defendant had been while a fugitive and the federal UFAT (or unlawful flight to avoid testimony) charge that was then pending against the defendant.[2] The defendant then described to Songer a scenario in which Ms. Caston pulled a revolver on him and he shot her in the head with a shotgun in self-defense. He then admitted going to Ms. McIntyre's home and shooting her with a rifle; he asserted that he did so because she had gotten Angie involved in drugs and given her the revolver that Angie pulled on him.
*418 Because the defendant initiated the communication, exchange, or conversation with Songer, he waived his right to have counsel present. Songer asked the defendant about his actions after committing the crimes. The defendant volunteered a confession as part of his response. Such a spontaneous statement voluntarily made by the defendant while in custody and not given as a result of police interrogation or compelling influence is admissible even when made without the Miranda warning. Therefore, the defendant's statements to Songer were admissible.

September 20, 2001 statement in elevator
Lee Harrell of the Louisiana State Police received a message from the defendant's aunt that the defendant wanted to talk to him. She informed him when the defendant would be in East Carroll Parish for a court hearing. On September 20, 2001, Harwell introduced Harrell to the defendant in a corridor of the East Carroll Parish Courthouse. The defendant thanked Harrell for coming. Since there was no private place and the guards were about to take the defendant back to Angola, the men stepped in the elevator to talk. Harrell told the defendant that they were working on the homicide of James and "Bubba" Kelly; if the defendant, who was a suspect in those murders, could provide information on those crimes, the district attorney had authorized him to offer the defendant a plea bargain. The defendant said he knew nothing about the murders and could provide no help. However, the defendant said he needed some help on Sharon McIntyre, declaring, "Ya'll don't understand. I didn't kill Angie. Well, I did but it was self-defense. Sharon, I killed the bitch. She deserved to die. And that's all you have on me."
Once again, the defendant confessed without his Miranda rights being reiterated and without the presence of counsel. However, as in his statements to Songer, the defendant initiated the conversation in which he confessed. Both Harrell and Harwell testified that the defendant had asked for the meeting. Because the defendant initiated the exchange, he waived his right to have counsel present. The voluntary statements were admissible.

Summary
The confessions were voluntary statements made while the defendant was in custody. In all of the situations, the defendant initiated the conversations and volunteered the confessions. The defendant was informed of his rights, including the right to counsel, at the time of his arrest. The statements were admissible as evidence, and the trial court did not err in denying the defendant's motion to suppress.
This assignment of error is meritless.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The defendant was previously convicted of manslaughter in March 1989.
[2] Since the defendant was being prosecuted on state charges, Songer testified that the federal charges were not going to be pursued.